**Hugh David SWATZELL, Appellant,**

v.

**NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Commonwealth of Kentucky, Appellee.**

No. 98–SC–53–DG.

Supreme Court of Kentucky.

June 17, 1999.

Donald Duff, Frankfort, KY, for appellant.

Stanley C. Nickell, Natural Resources and Enviromental Protection Cabinet Office of Legal Services, Frankfort, KY, for appellee.

STUMBO, Justice.

Appellant, Hugh David Swatzell, is a surface coal mining permittee from Hopkins County, Kentucky. In August of 1991, the Natural Resources and Environmental Protection Cabinet (hereinafter "Cabinet") issued a "Notice of Non–Compliance and Order for Remedial Measures" to Swatzell alleging violations of several mining regulations for his failure to backfill, grade, retopsoil, and revegetate portions of his 10.8 acre permit area. In September of 1991, after Swatzell failed to abate the violations, the Cabinet issued an "Order for Cessation and Immediate Compliance." In November of 1991, following Swatzell's failure to remedy the violations within the thirty-day abatement period cited in the cessation order, the Cabinet notified him of its intention to impose a penalty of $99,300.00 for his non-compliance.

Swatzell then requested a preliminary hearing before a Cabinet hearing officer. When the Cabinet convened the hearing in February of 1992, however, Swatzell failed to appear. In his Determinations and Recommendations, the hearing officer noted Swatzell's default, reiterated the alleged regulatory violations and found those violations had not been abated, established that Swatzell had been ordered to perform certain remedial measures, and noted his failure to perform such measures. Based on these findings, the hearing officer recommended that the

Secretary of the Cabinet accept the non-compliance and cessation orders issued against Appellant, impose a penalty of $99,300.00, and issue an order that was otherwise consistent with the hearing officer's finding of unabated violations. Although he was notified of the hearing officer's decision, Swatzell did not request a formal hearing. When the time for requesting such a hearing expired, the Secretary issued a final order which set forth the following pertinent information:

2) The Findings and Determinations contained in the Preliminary Determinations and Recommendations are admitted by the parties to the extent they deal with the fact of the violations and the assessment.

3) The Non–Compliance is accepted as to Hugh David Swatzell.

4) The Cessation Order is accepted as to Hugh David Swatzell.

5) Hugh David Swatzell violated the regulations cited in the Non–Compliance and Cessation order.

6) Hugh David Swatzell owes the Natural Resources and Environmental Protection Cabinet the sum of $99,300.00 on the cited violations.

Administrative Final Order of April 7, 1992, at 1–2. Swatzell did not file exceptions to the Secretary's order, nor did he seek judicial review of the Cabinet's action.

In June of 1992, the Cabinet filed a complaint in the Franklin Circuit Court seeking enforcement of civil penalties and an injunction requiring Swatzell to complete the remedial measures required by the non-compliance order and the cessation order. Initially, Swatzell failed to respond to the Cabinet's complaint and the Cabinet moved for a default judgment. Swatzell then obtained counsel, who filed an answer on his behalf in January of 1993. Three months later, the Cabinet moved for summary judgment, which the circuit court granted. Swatzell was ordered to complete the remedial measures as set forth in the non-compliance order, and to pay a civil penalty of $99,300.00. Swatzell appealed the summary judgment

to the Court of Appeals, which upheld the lower court's ruling. This Court granted discretionary review.

The issue before us is whether Swatzell may be required to perform the remedial measures set forth in the non-compliance and cessation orders, when no formal hearing on the issue of remedial measures was ever held, and the Secretary's final order did not expressly require remediation. For the reasons set forth below, we hold the circuit court appropriately ordered Swatzell to perform the remedial measures.

∎ Swatzell first argues that because the Cabinet's suit in the Franklin Circuit Court sought to enforce the Secretary's final order, and because that final order did not, in Swatzell's opinion, address the issue of reclamation of the mine site, the enforcement action must be limited, as was the Secretary's order, to the issue of civil penalty assessment. In support of this argument, Swatzell points to numeric paragraph number two of the Secretary's final order which states "2) The Findings and Determinations contained in the [hearing officer's] Preliminary Determinations and Recommendations are admitted by the parties *to the extent they deal with the fact of the violations and the assessment.*" (Emphasis added.) Swatzell contends this language explicitly limits the secretary's order to the issues of the "fact of the violations" and the assessment of the civil penalty. Yet this interpretation of the order flatly ignores the very next paragraphs of the order, which state that the Cabinet's noncompliance and cessation orders are deemed "accepted." We can conceive of only one reasonable explanation for this language—by "accepting" the non-compliance and cessation orders, the Secretary intended to incorporate them into the final administrative order. In fact, Black's Law Dictionary defines "accept" as, *inter alia,* to "adopt; agree to." Black's Law Dictionary 12 (6th ed.1990). Since, in our view, the Secretary's final order incorporated the non-compliance and

cessation orders by reference, and because Swatzell did not file exceptions to, or seek judicial review of that order, the circuit court, in enforcing the administrative action, properly ordered Swatzell to perform the acts of reclamation.

Although we believe the fact that the Secretary's final order incorporated the non-compliance and cessation orders by reference is determinative of the issue before us, we note that the Cabinet presents an additional ground to support the enforcement of remedial measures. Section 3(4)(b) of 405 KAR 12:020 provides that an order for cessation and immediate compliance "shall remain in effect until the condition, practice, or violation has been abated; until the order is vacated, modified, or terminated in writing . . .; or until it is vacated, modified, or terminated by a hearing officer . . .; or until the order expires. . . ." The Cabinet aptly points out that here, the original cessation order against Swatzell remains in full effect because the order has never been vacated, modified, or terminated at any stage in the administrative proceedings. Swatzell would have us hold that the entry of the Secretary's final administrative order effectively nullified the pre-existing non-compliance and cessation orders, just as the entrance of a final judicial order would nullify all previously existing non-final orders of the court. The orders at issue here, however, are administrative orders, not judicial ones, and the agency's regulations clearly set forth the only manner in which such orders may be terminated. 405 KAR 12:020(3)(4)(b). Because the non-compliance and cessation orders at issue here have not been vacated, modified, or terminated at any stage in the administrative proceedings, they remain in full effect. Accordingly, because Swatzell's obligation to abate the cited violations and to perform the specified acts of reclamation still exists, the circuit court did not err in enforcing compliance with those orders.

As a corollary to his first argument, Swatzell argues that the circuit court erred not only in substance, but in style. This is so because, in ordering Swatzell to perform remedial measures, the circuit court merely referred to the remedial measures set forth in the non-compliance order, rather than specifically enumerating with precise detail the acts to be enjoined. In fact, CR 65.02 does require that every "injunction shall be specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act restrained or enjoined." Citing *Fiscal Court of Jefferson County v. Courier–Journal & Louisville Times Co.,* Ky., 554 S.W.2d 72 (1977), and *Commonwealth v. Mountain Truckers Ass'n. Inc.,* Ky.App., 683 S.W.2d 260 (1984), Swatzell insists that the circuit court's failure to specifically set forth the acts of reclamation that Swatzell is to perform constitutes an "abuse by the 'strong arm of equity' " which requires reversal. *Mountain Truckers,* 683 S.W.2d at 263. We disagree.

"The Rule [CR 65.02] was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Fiscal Court,* 554 S.W.2d at 74 (citations omitted). Here, there was little chance Swatzell would be unable to determine precisely what the court's order required of him. In order to receive his mining permit, Swatzell was required to submit a detailed reclamation plan. Based upon this plan and upon the applicable mining regulations, both the initial non-compliance order and the subsequent cessation order set forth in precise detail the steps Swatzell was to perform in order to abate the regulatory violations, to wit: backfill, grade, topsoil, and seed all the existing highwall that was mined before March 1991, eliminate all gullies and erosion, redistribute topsoil on the area by basin # 1, and sow all areas of redistributed topsoil with appropriate permanent species of grasses and legumes. If we can, with minimal effort, ascertain exactly what remedial steps are required by

the circuit court's order, we find it hard to believe that Swatzell would be unable to do so as well. Although perhaps it would have been better practice for the circuit court to list in detail the acts enjoined by its order, its failure to do so was, at most, harmless error.

Swatzell next contends that the Secretary's order is invalid because the Cabinet bypassed mandatory administrative procedures. Because we agree entirely with, and cannot improve upon, the well-articulated opinion of the Court of Appeals on this point, we adopt the following portion of that opinion and incorporate it into our own.

[Swatzell's argument] begins with citation to KRS 350.028(3) which empowers the Cabinet:

(3) To issue, after *an opportunity for a hearing,* suspension orders or show cause orders requiring an operator, permittee, or person to adopt remedial measures that are necessary to comply with this chapter and administrative regulations adopted pursuant thereto. *Failure to attend a hearing shall be excused for good cause shown* .

We note at the outset that a preliminary hearing was held in January 1992 at Swatzell's request but he failed to appear. The hearing was scheduled as a result of Swatzell's completion of a form entitled "Proposed Assessment and Request for Hearing" wherein he indicated his intent to challenge both the violation and the penalty. We further note that Swatzell has never alleged that his failure to attend should be excused for good cause.

Swatzell's mandatory administrative process argument next focuses on Section 4 of KAR 12:020 (1991), which provides in pertinent part as follows:

(1) Issuance. If an authorized representative of the cabinet issues a notice of noncompliance and order for remedial measures or an order for cessation and immediate compliance, he or she shall reinspect the areas affected by the surface coal mining and reclamation operations or the coal exploration and reclamation operations on or soon after the date given in the notice or order for completion of remedial measures. At the time of reinspection, the authorized representative of the cabinet shall issue a notice of inspection of noncompliance.

(2) Form and content. The notice of inspection of noncompliance shall set forth whether . . .

(c) The remedial measures have not been completed. Following such a determination, the cabinet shall . . .

2. For situations in which the inspection was a reinspection of an order for cessation and immediate compliance and if the order for cessation and immediate compliance has not been abated following the preliminary hearing, initiate a formal hearing for suspension or revocation of the permit or approval, initiate a formal hearing for bond forfeiture, or *initiate administrative proceedings for other appropriate relief.*

405 KAR 12:020 Section 4(1) and (2) (1991) (emphasis added).

Swatzell maintains that this section of the surface mining regulations imposed on the Cabinet a duty to initiate a formal administrative hearing as a prerequisite to obtaining an ultimate sanction for a permittee's violation of mining statutes and regulations. The Cabinet's duty to proceed by way of a formal hearing, Swatzell argues, renders immaterial his own failure to attend the scheduled preliminary hearing and failure to request a formal hearing following entry of the hearing officer's Determinations and Recommendations. Although we agree with Swatzell that the statute and regulation he cites are intended to ensure that permittees alleged to be in violation of the mining statutes and regulations receive due administrative process before being sanctioned, we do not agree that they require a formal hearing before imposition of an order

requiring remedial measures. The statute requires "an *opportunity* for a hearing," a right clearly accorded Swatzell in this case. Moreover, the regulation states the Cabinet's *duty* to pursue sanctions against recalcitrant permittees who defy non-compliance and cessation orders. The regulation requires the Cabinet to seek sanctions where a permittee's refusal to abate a violation continues even after the need for abatement is upheld at a preliminary hearing. The sanctions of bond forfeiture and permit suspension or revocation are available only by way of a formal hearing. *Id.* However, other sanctions, such as those imposed against Swatzell, may be achieved after the Cabinet "initiate[s] administrative proceedings for other appropriate relief." *Id.* The Cabinet followed appropriate procedures in this case by issuing (1) a non-compliance order, (2) a cessation order, (3) a penalty assessment, with notice at each step that Swatzell could contest the Cabinet's allegations and determinations at either an informal or formal hearing and with adequate warning that a failure to request a hearing would be deemed an admission of the allegations and a waiver of objections to the agency's determinations. 405 KAR 7:095. The record includes substantial evidence of Swatzell's violations and of his refusal to abate them. It also shows that he waived each of the opportunities to challenge the Cabinet's finding of violations and its penalty assessment. The circuit court did not err, therefore, either by finding that the Secretary's order was procedurally sound, or by ruling that the Cabinet had properly pursued its administrative remedies.

■ Lastly, Swatzell argues that summary judgment was inappropriate in this case because issues of material fact existed "as to the nature and extent of the reclamation to which the Cabinet was entitled, if any." Again, we turn to the Court of Appeals' succinct and sharp resolution of this issue.

The Cabinet's Amended Complaint alleged a continuing failure to abate and although Swatzell denied the allegation, he made no effort to respond to the summary judgment motion with an affidavit or other evidence of record reflecting work at the site since the Secretary's order. Swatzell waived his right to challenge the specific findings in that order when he failed to object and appeal. *Natural Resources & Environmental Protection Cabinet v. Coleman,* Ky.App., 876 S.W.2d 614 (1994). If Swatzell had undertaken some remedial measures since that time which would obviate the need for all of the measures previously specified he had the obligation to present affirmative evidence and not rest on his "mere allegations." *Smith v. Food Concepts, Inc.,* Ky.App., 758 S.W.2d 437 (1988) (noting that a party resisting summary judgment must "put up or shut up"). *See also Steelvest v. Scansteel Service Center,* Ky., 807 S.W.2d 476, 482 (1991) (party opposing summary judgment must present some "affirmative evidence" of a genuine issue of material fact). Consequently, we reject Swatzell's allegation that a material issue still exists....

For the reasons set forth above, we affirm the judgment of the Court of Appeals and the Franklin Circuit Court.

All concur.